# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |
|---|---|
| **ROBERT WARD**, | Case No. 3:12-cv-00136-SI |
| Plaintiff, |  |
| v. | **OPINION AND ORDER** |
| **CINDY BOLEK**, *et. al.,* |  |
| Defendants. |  |

Michelle R. Burrows, 618 N.W. Glisan Street, Suite 203, Portland, Oregon, 97209. Attorneys for Plaintiff.

Hon. Ellen F. Rosenblum, and John Clinton Geil, Department of Justice, 1515 S.W. Fifth Avenue, Suite 410, Portland, Oregon, 97201. Attorneys for Defendant Rachel Bridges.

**SIMON, District Judge.**

Plaintiff Robert Ward ("Plaintiff" or "Ward") filed this lawsuit against numerous state actor defendants, including Oregon Senior Assistant Attorney General Rachel Bridges ("Bridges"), alleging several violations of 42 U.S.C. § 1983. Bridges filed a Motion to Dismiss, arguing that all claims against her should be dismissed because she is entitled to absolute prosecutorial immunity or qualified prosecutorial immunity. Dkt. 36.

After the Motion to Dismiss was fully briefed and argued before this Court, Plaintiff sought leave to file a First Amended Complaint. Dkt. 53. Plaintiff represented that the First Amended Complaint included additional factual information obtained during discovery with

certain defendants other than Bridges and that it provided clarity of Plaintiff's claims. The First Amended Complaint dismissed certain defendants, deleted certain state law claims, and added two Due Process claims against the City of Hillsboro. The First Amended Complaint also narrowed the claims alleged against certain individual defendants—in the original Complaint all claims were alleged against all of the individual defendants.

This Court granted Plaintiff's Motion to Amend the Complaint, with the express understanding that the pending Motion to Dismiss would apply to the First Amended Complaint. Dkt. 61. To the extent that was not previously made clear, this Court grants Plaintiff's motion. The parties were given the opportunity to provide additional briefing relating to the Motion to Dismiss, Dkt. 61, but they declined to do so. Accordingly, this Opinion and Order addresses the claims and factual allegations relating to Bridges as alleged in the First Amended Complaint. Dkt. 62. The only claims alleged against Bridges in the First Amended Complaint are claims for violations of 42 U.S.C. § 1983, based on (1) loss of reputation; and (2) malicious prosecution. For the reasons stated below, Plaintiff's claims against Bridges are dismissed.

## FACTUAL BACKGROUND

In considering a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded factual allegations in the complaint and construe them in favor of the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The Court need not accept allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Id*. Because this Motion relates only to Bridges, the alleged facts that do not apply to Bridges or are not otherwise relevant for purposes of this Motion are not discussed in this Opinion and Order.

During the relevant time period, Ward was a Hillsboro Police Department employee. First Am. Compl. ¶ 23. On April 18, 2010, Ward responded to the scene of a traffic stop made by

Page 2 – Opinion and Order

two other peace officers to provide translation services because the driver and passenger of the stopped vehicle appeared to speak only Spanish. *Id.* ¶ 25. The traffic stop became more difficult based on the lack of cooperation, apparent drunkenness and incoherency of the driver and passenger, and some misunderstandings between Ward and the other two officers. *Id.* ¶¶ 27-29. Ward eventually tossed some beer cans out of the vehicle to show that he found open containers—the toss was in the direction of the driver of the stopped vehicle and one of the officers, and at least one of the cans made physical contact with the suspect and the other officer. *Id.* ¶ 30. The officer lodged a complaint against Ward based on the beer can toss, Ward was immediately placed on paid administrative leave, and an investigation of Ward was conducted. *Id.* ¶¶ 31-38.

In May 2010 the matter was submitted to the Washington County District Attorney's office for prosecution but, due to a potential conflict of interest, was transferred to the Office of the Attorney General and assigned to Bridges. *Id.* ¶ 41. Someone at the City of Hillsboro police department released Ward's confidential personnel file to Bridges. *Id.* ¶ 43. While investigating the beer can incident, Bridges also opened an additional investigation from a complaint that she found in Ward's personnel file, alleging that Ward mishandled a theft case. *Id.* ¶ 44.

In July 9, 2010, Bridges sent a letter to Ward through his defense attorney, proposing a resolution of the "beer can" incident under which no criminal charges would be filed if Ward voluntarily resigned and waived certain rights. *Id.* ¶ 48. Bridges also sent a copy of that letter to Hillsboro Police Lieutenant Allen Zaugg (also a Defendant in this action) and to Akin Blitz, the attorney representing the City of Hillsboro. *Id.* Bridges attached a resignation form and agreement. *Id.* Ward was given approximately two weeks to decide, and the resignation agreement required Ward to resign his position, waive his rights under the collective bargaining

agreement and release the City and its personnel from any and all civil rights claims. *Id*. ¶¶ 48-49 and 55. Bridges explained to Ward's attorney at the time that if Ward did not voluntarily resign, a formal internal affairs investigation would begin on August 1, 2010, and Ward would be criminally charged for the "beer can" incident. *Id*. ¶ 50. Ward did not sign the agreement. *Id*. ¶

On or about August 1 or August 10, 2010,[1] a formal internal affairs investigation commenced. *Id*. ¶¶ 51, 52. At the insistence of Bridges, the formal investigation related to both the "beer can" incident and the allegations of unprofessional conduct from the other incident that Bridges had discovered in Ward's personnel file. *Id*. ¶ 52. It appears that Bridges was given copies of the confidential internal affairs interviews. *Id.* On September 8, 2010, Ward was provided the findings of the two investigations, which were determined to be "founded." *Id.* ¶ 53. On September 24, 2010, Bridges issued a citation to Ward for Assault IV, Harassment, and Official Misconduct based on the "beer can" incident. *Id*. ¶ 51. The Assault IV charge prevented Ward from carrying a weapon during work. *Id*. On October 5, 2010, Ward was arraigned on numerous charges, including Assault IV, Harassment, Attempted Harassment, and three counts of Official Misconduct. *Id*. ¶ 54. As a requirement for Ward's pretrial release, Bridges requested that Ward not be allowed to carry firearms except for hunting. *Id*. Ward moved to have that requirement stricken, but his motion was denied by the court. *Id*. Ward was placed on unpaid leave on October 12, 2010, exhausted his accrued paid time off in January 2011, and lost his medical benefits on March 1, 2011. *Id*. ¶ 59.

On April 15, 2011, Ward was found not guilty of all charges at trial. *Id.* ¶ 62. On April 18, 2011, Ward was placed on paid administrative leave. *Id.* Ward returned to work full

---

[1] Plaintiff's Complaint alleges at ¶ 51 that the formal internal affairs investigation commenced on August 1, 2010 and at ¶ 52 that the formal internal affairs investigation commenced on or about August 10, 2010. That discrepancy is not material to this Opinion and Order.

time on July 1, 2011, and was assigned to a specially-created position of "desk officer." *Id.* ¶¶ 63, 65. Sometime later, Ward retired. *Id.*

## STANDARD

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.,* 611 F.3d 495, 501 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

## ANALYSIS

Bridges argues that her conduct is protected by absolute prosecutorial immunity and, in the alternative, by qualified prosecutorial immunity.

## A.  Standards for Absolute Prosecutorial Immunity

An official seeking absolute immunity bears the burden of showing that such immunity is justified for the action in question. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). A prosecutor is entitled to absolute prosecutorial immunity for actions that are intimately associated with the judicial phase of the criminal process. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009). To be entitled to absolute immunity, the prosecutorial act need not occur within the courtroom. *See Buckley*, 509 U.S. at 272 ("[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.") (quotations and citation omitted). A prosecutor's functions that are protected by absolute immunity include initiating a prosecution and presenting the State's case, appearing at a probable cause hearing to present evidence in support of a search warrant application, professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at a trial or grand jury after a decision to seek an indictment has been made, and preparing and filing an arrest warrant. *See id.* at 273; *Van de Kamp*., 555 U.S. at 343; *Ewing v. City of Stockton*, 588 F.3d 1218, 1232-33 (9th Cir. 2009).

Absolute immunity "may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp* , 555 U.S. at 342 (quotations and citation omitted). Administrative functions directly connected with the conduct of a trial (such as training prosecutors when and how to disclose

impeachment evidence), however, are protected by prosecutorial immunity. *Id.* at 346. Functions that have been found not to qualify for absolute immunity include advising police officers whether probable cause exists during their pretrial investigation, fabricating evidence before probable cause has been established, making statements to the press, or acting as a complaining witness in support of a warrant application. *Id.* at 343; *Ewing*, 588 F.3d at 1233.

In determining whether absolute immunity applies to particular actions, the court applies a functional approach, "which looks to 'the nature of the action performed, not the identity of the actor who performed it.'" *Buckley*, 509 U.S. at 269 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

## B.  Standards for Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (citation nomitted). A court has discretion to decide which of these two prongs of the qualified-immunity test to tackle first. *Id.*

Qualified immunity allows government officials to make reasonable but mistaken judgments about open legal questions and "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 2085 (quotations and citation omitted).

## C.  Claim for Loss of Reputation

Ward alleges that the internal investigation and criminal charges created a loss of reputation and that false and damaging accusations were brought against him in conjunction with the investigation and criminal prosecution. First Am. Compl. ¶ 73. He alleges several instances of specific conduct by "defendants" without separately identifying which defendant engaged in

which activity. *Id*. ¶ 74. Based on the general factual allegations of the Complaint, the briefing in this Motion and the oral argument, it appears that the conduct by Bridges alleged to have resulted in Plaintiff's loss of reputation include: (1) sending not only to Ward's defense attorney but also to Hillsboro Police Lieutenant Zaugg and to the attorney for the City of Hillsboro Akin Blitz, a letter that stated if Ward did not sign a voluntary resignation form he would be subject to an internal affairs investigation and criminally charged; (2) receiving and reviewing Ward's confidential personnel and internal investigation files; (3) conducting interviews with Ward's colleagues that insinuated that Ward's behavior was inappropriate for his position and that he had done something wrong; and (4) allowing Ward's situation to become common knowledge among his colleagues.

### 1. Plaintiff's allegations fail to raise a liberty interest

Ward claims that Bridges' actions resulted in deprivation of his federally protected right to employment. The Fourteenth Amendment's protection against deprivation of liberty encompasses the right of persons to engage in any of the common occupations of life. *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992). If, when terminating an employee, the government engages in conduct "that so severely stigmatize the employee that she cannot avail herself of other employment opportunities, a claim for deprivation of liberty will stand." *Id.* (citation omitted). The stigma required must be "severe and genuinely debilitating" such that it essentially forecloses the employee's freedom to take advantage of other employment opportunities. *Id*. The charges must amount to accusations of moral turpitude, such as immorality or dishonesty, to invoke constitutional protection. *Id*. at 1142. Accusations that an employee is incompetent, unable to get along with others, lacks judgment or is untrustworthy fail to rise to a level that implicates a liberty interest. *See Harrington v. City of Portland,* 677 F. Supp. 1491, 1501 (D. Or.

1987). The accusations must also be substantially false. *See Siegert v. Gilley*, 500 U.S. 226, 234 (1991).

Here, Ward's claim for loss of reputation fails to articulate a constitutionally protected liberty interest in employment for several independent reasons. First, Ward does not allege that he was terminated—he was put on vacation and/or sick leave status for approximately three months (October 2010 through January 2011), unpaid administrative leave for approximately three months (January 2011 through April 18, 2011), and was otherwise on paid administrative leave or full employment. First Am. Compl. ¶¶ 59, 62, 63. Termination of the employee is a cornerstone of a constitutional claim for deprivation of the Fourteenth Amendment liberty interest of employment. *See, e.g., Hyland*, 972 F.2d at 1141 (the stigmatizing conduct must be "in the course of dismissing an employee"); *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir. 1988) ("In order to trigger the procedural protections of due process attendant to a properly presented liberty interest claim, a plaintiff must show that . . . the charge is made in connection with termination of employment.") (quotations and citation omitted). Because there was no termination of Ward's employment, he fails to plead a constitutionally-protected employment deprivation.

Second, Bridges was not Ward's employer and the alleged defamation by her was not made in connection with the termination of Ward's employment. Thus it does not implicate Ward's liberty interest in employment.

Third, the conduct alleged is not sufficiently egregious to trigger a protected liberty interest. Ward alleges the following conduct by Bridges that Ward claims deprived him of his liberty interest in employment: Bridges reviewed Ward's confidential files, improperly disseminated that information to others, and insinuated to Ward's colleagues that he had engaged

in the wrongful conduct he was ultimate charged with—assault, harassment, and official misconduct. None of Ward's allegations involve accusations or statements by Bridges of moral turpitude and none are so severe and genuinely debilitating that Ward lost his freedom to take advantage of other employment opportunities. *See, e.g., Hyland*, 972 F.2d at 1142 (public statements that peace officer improperly released confidential information to the public and revealing the circumstances of the peace officer's discharge insufficient to implicate a liberty interest); *Harrington*, 677 F. Supp. at 1493-94, 1501 (allegations by police chief that she was publicly discredited by the charges made against her in the process of a two month public investigation that was triggered by false accusations of certain Portland police officers, and her subsequent removal as police chief, insufficient to raise a liberty interest because the public charges related to her incompetence, the inability to get along with others and lack of judgment or trust). In fact, Ward was returned to full employment at the Hillsboro Police Department until he resigned. He does not allege any facts indicating that conduct by Bridges "result[ed] in the permanent exclusion or protracted interruption of gainful employment." *Hyland*, 972 F.2d at 1142. At most, the conduct alleged could make Ward "less attractive" to future employers, but that is not enough to implicate the Due Process Clause. *Id.*

### 2. The alleged conduct by Bridges is entitled to prosecutorial immunity

Even if Ward's allegations did rise to the level of implicating a constitutionally protected liberty interest, the conduct he alleges by Bridges is entitled to absolute or qualified prosecutorial immunity.

### a. Sending the July 9, 2010 letter is entitled to absolute immunity.

After reviewing Ward's file, Bridges sent a letter to Ward's defense counsel, the investigating Police Lieutenant (Zaugg) and the attorney for the City of Hillsboro (Blitz), setting out a proposed resolution of the case that would avoid the need for formal charges and a trial.

Page 10 – Opinion and Order

Bridges proposed that Ward voluntarily resign, waive his rights to file a lawsuit and waive his rights under the union contract, and informed Ward that if he refused criminal charges would be filed against him and an internal investigation by the Hillsboro Police Department would be commenced. This conduct was performed by Bridges as an advocate for the State, is analogous to offering a plea deal, and is entitled to absolute immunity. *Arnold v. McClain*, 926 F.2d 963, 966-67 (10th Cir. 1991); *see also Buckley*, 509 U.S. at 272 (duties as role of advocate for the State involve actions preliminary to the initiation of a prosecution and are entitled to absolute immunity); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (a prosecutor's efforts in negotiating, entering into and even breaching a plea agreement is entitled to absolute immunity, even if it involves making false representations or other wrongful behavior).

The Tenth Circuit Court of Appeals considered this very issue when a police officer was called into the district attorney's office and told that if he did not resign by 5:00 p.m. that same day, criminal charges would be filed against him. *Arnold*, 926 F.2d at 964. The Tenth Circuit held that the technical label for the type of negotiation at issue was immaterial—noting that the disposition of criminal charges by agreement between the prosecutor and the accused is an essential component of the administration of justice and that it is to be encouraged. *Id*. at 967 (citing *Santobello v. New York*, 404 U.S. 257, 260 (1971)). The *Arnold* court found that the negotiation and agreement at issue was "sufficiently analogous to a plea bargain to warrant the same deference to the prosecutor's discretion" and held that the prosecutor was entitled to absolute prosecutorial immunity for his actions in securing the resignation of the police officer. *Id*. Here, Bridges made an almost identical offer, although she allowed Ward more time to make his decision than one business day. Accordingly, Bridges' conduct in threatening to bring charges if Bridges did not resign is entitled to absolute prosecutorial immunity.

It is unlikely that sending a copy of the July 9, 2010 letter to the attorney representing the City and the investigating Lieutenant, keeping them informed of a potential resolution to the case that would negate the need for further investigation or legal options, is wrongful, but this Court need not make such a determination. Even if Bridges' act of sending a copy of the letter to the attorney representing the City and to the investigating Lieutenant were wrongful, it is immaterial to the analysis of absolute immunity because even wrongful conduct, if done as an advocate for the State, is entitled to absolute immunity. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409 (1976) (holding that prosecutor accused of knowingly presenting false testimony at trial is protected by absolute immunity); *Cady v. Arenac Cnty*, 574 F.3d 334, 340 (6th Cir. 2009) (absolute immunity "bar[s] § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor").

### b. Reviewing Ward's confidential information is entitled to absolute immunity.

A determination was made by the Hillsboro Police Department that Ward's case should be referred for prosecution. Accordingly, his file was provided to the Washington County District Attorney. Because of a potential conflict of interest, the file was transferred to Bridges for prosecution. Regardless of whether it was proper for Bridges to receive Ward's confidential personnel file and internal investigation files, evaluating a file to make a determination of whether to prosecute has been held to be a function of a prosecutor as the advocate for the State and thus accorded absolute immunity. *See Buckley*, 509 U.S. at 273 (absolute prosecutorial immunity applies to the prosecutor's professional evaluation of the evidence assembled by the police). Absolute immunity applies even when the conduct is wrongful. *Cady*, 574 F.3d at 340. Thus, Bridges is entitled to absolute immunity for her review of Ward's personnel file and internal investigation reports.

Even if Bridges were not entitled to absolute immunity for her review of Ward's personnel and internal investigation files, she would still be entitled to qualified immunity. Ward points to no authority that a police department providing a prosecutor with the personnel files of a police officer who is under criminal investigation violates a clearly established statutory or constitutional right.

Ward argues that his personnel files and internal investigation information are confidential and cannot be disclosed and that Bridges' receipt of the information violated Or. Rev. Stat. §§ 192.501(3), (12) and 192.502(2).[2] "As a general rule, a violation of state law does not lead to liability under § 1983." *Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984) and *Doe v. Connecticut Dep't of Child & Youth Servs.*, 911 F.2d 868, 869 (2nd Cir. 1990)). Even if it could, however, these statutes do not establish that Bridges, by receiving and reviewing Ward's personnel file and internal investigation information, violated a clearly established statutory right.

The Oregon statutes relied upon by Ward create exemptions for certain information from public disclosure under a public request for information. Ward points to no authority that these statutes prevent prosecutors from receiving such information in the context of a criminal prosecution.[3] To the contrary, Oregon courts have held that the right to exempt information from

---

[2] Notably, Bridges is the alleged recipient of the files, so even if the act of providing the files violated any of these statutes, Bridges is not the disclosing party. To the extent that she was involved in a "conspiracy" to obtain the files, prosecutorial immunity would still apply. *See, e.g., Imbler v. Pachtman*, 424 U.S. at 416, 431 (allegations of a conspiracy between prosecutors and police to unlawfully charge and convict plaintiff did not overcome prosecutorial immunity); *Ashelman v. Pope*, 793 F.2d 1072, 1077-78 (9th Cir.1986) (allegations of conspiracy between judge and prosecutor insufficient to overcome their immunities).

[3] A requirement that prosecutors cannot review personnel files of police officers is contrary to the body of case law that heavily encourages, although does not require, prosecutors to review police officer personnel records whenever a police officer is a testifying witness in a criminal

disclosure belongs to the public body, not to the individual employee, and that the public body

may waive the exemption. *See Oregonian Publ'g Co. v. Portland Sch. Dist. No. 1J*, 152 Or. App.

135, 952 P.2d 66, 69 (Or. App. 1998) ("[W]e conclude that it is the district, and not the affected

individuals, that has the right to withhold the disputed report under the public records inspection

law. Consequently, the district can waive its right to do that.").

In the *Oregonian* case, the court originally found that the district had provided the

confidential employee record to the District Attorney's office to be used to determine whether an

alleged crime had been committed by the employee and found such a distribution resulted in the

loss of the file's character as a confidential personnel record. *Id.* at 67. When it was later

determined that the file was submitted to the District Attorney for review in response to a public

information request and not for consideration of an alleged crime, the Oregon Court of Appeals

analyzed whether a different type of disclosure by the public employer could waive the

confidential status of the file and found that it did, because the holder of the exemption was the

employer. *Id.* at 68-69.

Here, to the extent that Ward's personnel file and internal investigation reports could be

considered subject to the Oregon statutes exempting certain information from public information

requests, the Hillsboro Police Department had the power to waive the confidential status of the

information, and did so by providing the information to Bridges. Bridges is entitled to qualified

---

case to ensure that any exculpatory material, such as disciplinary reports or actions, are available
to the criminal defendant. *See, e.g., United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996)
(reiterating that a court cannot order a prosecutor to personally review law enforcement
personnel files for exculpatory information, but noting that there is little justification and much
danger to the quality of justice if the prosecutor does not); *United States v. Colima-Monge*, 962
F. Supp. 1337, 1339-40 (D. Or. 1997) (noting that the government has a duty to inspect
personnel records of federal law enforcement officers who will testify at a trial, regardless of
whether the defense has made a showing of materiality).

immunity because her receipt and review of the allegedly confidential information did not violate a clearly established constitutional or statutory right. *al-Kidd*, 131 S.Ct. at 2080 (qualified immunity applies unless the government official violated a statutory or constitutional right).

### c.   Conducting interviews and allowing Ward's situation to become common knowledge are entitled to absolute or qualified immunity.

The First Amended Complaint does not contain any allegations specific to Bridges that she conducted any interviews or publicly disclosed Ward's situation with the exception of copying the July 9, 2010 letter to Lieutenant Zaugg and the Attorney for the City of Hillsboro Mr. Blitz.[4] Plaintiff's briefing, however, represents that Bridges conducted interviews with Ward's colleagues and during the interviews insinuated that Ward's behavior was inappropriate and that she allowed Ward's situation to become common knowledge amongst Ward's colleagues.

### i.   The alleged interviews

Plaintiff fails to describe when the interviews took place and on which alleged infractions the interviews were focused. It is unclear whether Plaintiff alleges that Bridges conducted interviews before or after Bridges charged defendant, and whether the interviews were related to the "beer can" incident or the allegedly mishandled theft case. These facts are critical to the immunity analysis, so this Court will analyze immunity assuming each of the possible scenarios.

To the extent Bridges conducted interviews to gather additional facts relating to the prosecution of the "beer can" incident, which was given to her for prosecution in May 2010, such interviews are entitled to absolute immunity. *See KRL v. Moore*, 384 F.3d 1105, 1111 (9th Cir. 2004) (holding that prosecutors "are absolutely immune from liability for gathering additional evidence after probable cause is established or criminal proceedings have begun when they are

---

[4] As discussed above, the July 9, 2010 letter is entitled to absolute immunity.

performing a quasi-judicial function) (quotations and citation omitted); *Broam v. Bogan*, 320

F.3d 1023, 1033 (9th Cir. 2003) (a prosecutor is "absolutely immune from liability for damages

if he was gathering evidence to present to the trier of fact."). To the extent Bridges conducted

interviews after she charged Ward on September 24, 2010, to gather additional facts relating to

the prosecution of either incident, those interviews are entitled to absolute immunity. *See KRL*,

384 F.3d at 1111; *Broam*, 320 F.3d at 1033. Applying absolute immunity in such circumstances

is "bolstered by the availability of the crucible of the judicial process to check a prosecutor's

overly-aggressive pursuit of evidence for trial." *KRL*, 384 F.3d at 1112 (quotations and citation

omitted).

      To the extent, however, that Bridges conducted interviews to investigate whether to bring

a prosecution against Ward for either of the incidences, such interviews are "investigatory" in

nature and not subject to absolute immunity. *See Buckley*, 509 U.S. at 273 (when prosecutor

performing investigative functions normally performed by a detective or police officer, such as

searching for clues and corroboration the might give probable cause to recommend an arrest,

then an analysis under qualified immunity principles is more appropriate); *KRL*, 384 F.3d

at 1111 ("However, a prosecutor can still perform police investigative work after probable cause

has been established, for which only qualified immunity would apply.") (quotations and citation

omitted).

      Conducting interviews and insinuating that Ward had engaged in improper conduct

during those interviews does not implicate a well-established statutory or constitutional right.

*See, e.g., Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (*en banc*) (noting that "mere

allegations that Defendants used interviewing techniques that were in some sense improper, or

that violated state regulations, without more, cannot serve as the basis for a claim under

§ 1983"); *Smith v. Short*, Civil No. 07-515-KI, 2008 WL 5043917 at *5 (D. Or., Nov. 21, 2008) (allegations of a shoddy investigation insufficient to support a § 1983 claim because there is no constitutional right to have witnesses interviewed in particular way or have an investigation carried out in certain way). Accordingly, Ward's claims relating to the allegedly improper interviews fail the first prong of the qualified immunity test and Bridges' conduct in conducting the interviews is entitled to qualified immunity.

### ii.  Allowing Ward's situation to become common knowledge

No facts are alleged describing how Bridges allowed Ward's situation to become common knowledge. It appears that, with respect to Bridges, this allegation is based on the July 9, 2010 letter, copies of which were sent to Lieutenant Zaugg and the attorney for the City of Hillsboro Mr. Blitz.  It may also be based on the alleged interviews. No public statements or any statements to the press, however, are alleged. To the extent that this allegation is based on the July 9, 2010 letter, Bridges has absolute immunity. To the extent that it is based on the alleged interviews, Bridges is entitled to either absolute or qualified immunity, as discussed above.

## D.  Claim for Malicious Prosecution

To assert a claim for malicious prosecution, a plaintiff "must allege that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012). The fact that a prosecution was "unsuccessful does not mean it was not supported by probable cause." *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995). Prosecutors are generally absolutely immune from liability from malicious prosecution claims when acting within their scope of employment because decisions to prosecute and present the State's case are subject to absolute immunity. *See, e.g., Ewing,* 588 F.3d at 1232.

Here, Ward has alleged only conclusory assertions that Bridges' prosecution lacked probable cause. Even if the Court construes the First Amended Complaint as sufficiently alleging a lack of probable cause, Ward has not alleged sufficient facts to show that Bridges prosecuted Ward for the purpose of denying him any constitutional right. As discussed above, Ward's allegations that Bridges violated his constitutionally-protected liberty interest in employment fails. Ward alleges no other violation of constitutional rights by Bridges in the First Amended Complaint. Accordingly, Ward fails to state a claim for malicious prosecution.

## CONCLUSION

Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 53) is GRANTED. Defendant Bridges' Motion to Dismiss (Dkt. 36) is also GRANTED.  All claims against Defendant Bridges are dismissed.

**IT IS SO ORDERED**.

DATED this 14th day of January, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge