# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**ROBERT WARD,**

               Plaintiff,

    v.

**CINDY BOLEK**, *et. al.*,

               Defendants.

Case No. 3:12-cv-00136-SI

**OPINION AND ORDER**

Michelle R. Burrows, 618 N.W. Glisan Street, Suite 203, Portland, Oregon, 97209. Attorney for Plaintiff.

Karen O'Kasey and Mark Sherman, Hart Wagner LLP, 1000 S.W. Broadway, Twentieth Floor, Portland, OR 97205. Attorneys for Defendants Bolek, Ehrich, Potter, Schrader, Ashenbrenner, Skinner, Zaugg, Rademacher, Goerling, Does #1-10 Hillsboro Police Department employees, and City of Hillsboro.

Christopher A. Gilmore, Senior Assistant County Counsel, Office of Washington County Counsel, 155 North First Avenue, Suite 340 – MS 24, Hillsboro, OR 97124-3072. Attorneys for Defendants Washington County and Sergeant Spang.

**Michael H. Simon, District Judge.**

      Plaintiff Robert Ward ("Plaintiff" or "Ward") filed this lawsuit against numerous state

actor defendants alleging several violations of 42 U.S.C. § 1983 and several violations of state

law. Defendants move for summary judgment against all of Plaintiff's claims. Dkts. 74 & 80. In response, Plaintiff moves to dismiss: (1) all claims against the Washington County defendants; (2) all claims against Individual Defendants Ashenbrenner, Skinner, and Zaugg; and (3) his Fourth, Fifth, Sixth, Seventh, and Ninth Claims for relief. Dkt. 92. Plaintiff's motion is granted and those claims and defendants are hereby dismissed.

After Plaintiff's voluntarily dismissals, the remaining defendants are: Sergeant Ted Schrader ("Schrader"), Cindy Bolek ("Bolek"), Lieutenant Doug Ehrich ("Ehrich"), Sergeant Neal Potter ("Potter"), Lieutenant Mitch Rademacher ("Rademacher"), Lieutenant Richard Goerling ("Goerling") (collectively, the "Individual Defendants"), and the City of Hillsboro ("City"). Plaintiff's remaining claims are: (1) First Claim for Relief under 42 U.S.C. § 1983, asserting that the Individual Defendants violated Plaintiff's procedural due process rights; (2) Second Claim for Relief under 42 U.S.C. § 1983, asserting that the Individual Defendants violated Plaintiff's reputational rights protected by the Fourteenth Amendment; (3) Third Claim for Relief under 42 U.S.C. § 1983, asserting that the Individual Defendants violated Plaintiff's privacy rights protected by the First and Fourteenth Amendments; and (4) Eighth Claim for Relief under 42 U.S.C. § 1983, asserting that the City violated Plaintiff's procedural due process rights. For the reasons discussed below, summary judgment is granted against all of Plaintiff's remaining claims.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

PAGE 2 – OPINION AND ORDER

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . . " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Ward was an officer with the Hillsboro Police Department ("HPD") from approximately January 1990 through August 31, 2012. Deposition of Robert Ward ("Ward Depo.")[1] 10:10-15, 90:17-20, 140:3-5. On April 7, 2010, Ward responded to an incident at a pawn shop. On April 9, 2010, the pawn shop owner called the HPD and complained about Ward's conduct. Deposition of Lieutenant Rademacher ("Rademacher Depo.")[2] 18:20-19:22.

On April 18, 2010, Ward assisted Washington County Sheriff's Office ("WCSO") Sergeant Spang and Deputy Wheaton during a traffic stop and suspected driving while intoxicated violation. Ward's assistance was requested to provide translation services. Ward Depo. 154:2-16. During that traffic stop, Ward became uncomfortable with how the WCSO officers were handling the traffic stop, believing it to be unsafe and that the WCSO officers were

---

[1] Excerpts of this deposition are attached as Exhibit 1 to the Declaration of Karen O'Kasey ("O'Kasey Decl.") (Dkt. 83-1), Exhibit 18 to the Declaration of Michelle Burrows ("Burrows Decl.") (Dkt. 93-18), and Exhibit B to the Declaration of Mark Sherman ("Sherman Decl.") (Dkt. 103-2).

[2] Excerpts of this deposition are attached as Exhibit 6 to the O'Kasey Decl. (Dkt. 83-6) and Exhibit 15 to the Burrows Decl. (Dkt. 93-15).

speaking too quickly for proper translation. *Id.* 158:4-12, 159:12-60. Deputy Wheaton was a relatively new officer and Ward offered Wheaton advice on handling the field sobriety testing. *Id.* 161:11-18. As the stop continued, the officers had difficulty identifying the driver and the passenger, and the vehicle's occupants were nonresponsive when asked about drinking alcohol. *Id.* 172:11-178:11. After Ward witnessed the driver appear to slide something under the driver's seat before getting out of the vehicle, Ward searched the vehicle and found a number of empty and partially empty beer cans and two full beer cans. *Id.* 179:9-20. Ward "flicked" two of the empty or partially empty cans toward the passenger and asked if he had drunk them. *Id.* 179:21-180:16. The cans hit the vehicle, bounced, and one struck Sergeant Spang when he reached out his hand. *Id.*; Deposition of Sergeant Spang ("Spang Depo.") 111:13-23.[3]

Later that day, Sergeant Spang verbally reported the incident to Schrader at the HPD, complaining about Ward's conduct. Spang Depo. 33:15-25. Schrader reported the incident to Rademacher. Rademacher Depo. 15:24-16:12. Based on Rademacher's personal knowledge of two complaints against Ward close in time to one another, on April 18, 2010, Rademacher notified Ward that he was under investigation, was the subject of an internal affairs ("IA") investigation, and had been placed on paid administrative leave pending the outcome of the investigations of the two incidents. Rademacher Depo. 21:20-25, 23:8-17; Burrows Decl. Ex. 4. Dkt. 93-4.

In addition to HPD's investigation, the WCSO commenced a criminal investigation into Ward's conduct, and referred that investigation to the Washington County District Attorney's office. Burrows Decl. Ex. 9 at 2. The IA investigation by the HPD was then put on hold pending the criminal investigation. *Id.* In early June 2010, the Washington County District Attorney's

---

[3] Excerpts of this deposition are attached as Exhibit 17 to the Burrows Decl. (Dkt. 93-17).

office referred the investigation of Ward to the Oregon Department of Justice ("Oregon DOJ").

*Id.* Rachel Bridges, Assistant Attorney General at the Oregon DOJ, was assigned the case.

Deposition of Rachel Bridges ("Bridges Depo.") 41:3-15.[4] Ms. Bridges believed there was

enough probable cause to charge Ward, although she did not think it was a "winnable" case.

*Id.* 21:4-18, 58:6-19.

On August 20, 2010, the HPD issued a more formal and detailed memorandum to Ward

confirming that a formal IA investigation has been commenced and explaining the potential

violations of rules, policies, and laws that were being investigated and the underlying facts and

conduct being investigated relating to both the pawn shop and the traffic stop incidents. Burrows

Decl. Ex. 6. As of this date, both HPD's IA investigation and the Oregon DOJ's criminal

investigation were ongoing at the same time. Witness interviews were jointly conducted, but the

Oregon DOJ did not have access to the IA-specific portions of the interviews. Bridges Depo.

46:20-47:6, 48:22-49:5.

On September 2, 2010, HPD was informed by the Oregon DOJ that its criminal

investigation was complete, although a charging decision had not yet been made. Burrows Decl.

Ex. 9 at 3. On September 8, 2010, Ward was notified that HPD wanted to interview him. *Id.* On

September 13, 2010, Ward was interviewed by Ehrich and Potter. *Id.* With Ward during the

interview was Hillsboro Police Officers' Association ("HPOA" or "Union") attorney Mark

Makler and HPOA representative Stephen Beaver. *Id.*

In September 2010, Ms. Bridges issued Ward a citation for Assault in the Fourth Degree,

Harassment, Attempted Harassment, and three counts of Official Misconduct. First Am. Compl.

¶ 51; Bridges Depo. 66:22-67:19. On October 5, 2010, Ward was arraigned on those charges in

---

[4] Excerpts of this deposition are attached as Exhibit 7 to the O'Kasey Decl. (Dkt. 83-7) and Exhibit 13 to the Burrows Decl. (Dkt. 93-13).

Washington County Circuit Court. Burrows Decl. Ex. 9 at 3. As part of the terms of his release,

Ward was prohibited from possessing a firearm, except for hunting. First Am. Compl. ¶ 54. On

October 11, 2010, HPD notified Ward that because the terms of his release prohibited him from

possessing a firearm, Ward's status was changed from paid administrative leave to unpaid

administrative leave, effective as of the date of his arraignment. Ward Depo. 9:16-23; Sherman

Decl. Ex. C (Dkt. 103-3). The HPD then began using Ward's accrued leave to continue

compensating him during his unpaid leave. Sherman Decl. Ex. C.

The Collective Bargaining Agreement ("CBA") between the City and the HPOA

establishes an escalating four-step grievance procedure, with the first three steps involving City

personnel of escalating authority and the fourth step being arbitration. CBA Art. 17. O'Kasey

Decl. Ex. 3. Dkt. 83-3. The CBA allows the HPOA or the employee to submit written

grievances. *Id.*

On October 20, 2010, the HPOA filed a grievance on behalf of Ward challenging Ward's

placement on unpaid leave and forced use of his personal leave as violative of the CBA between

the Union and the City and of longstanding policies, practice, and procedures. *Id.* The City

responded to the grievance on October 28, 2010, finding that Ward's placement on unpaid leave

did not violate the CBA or any policy, practice, or procedure. *Id.* Ex. D. Dkt. 103-4. On

November 16, 2010, a meeting was held between the HPOA and HPD as required in Step Two

of the grievance process, and on November 24, 2010, the City upheld the placement of Ward on

unpaid leave in response to second-level review of the grievance. *Id.* Ex. E. Dkt. 103-5.

On November 4, 2010, the City sent Ward a letter with the subject line "Notice of intent

to terminate your employment." Letter to Plaintiff dated November 4, 2010 (Burrows Decl. Ex.

1). Dkt. 93-1. This letter notified Ward that the City was "inclined" to terminate Ward's

employment, but would hold a hearing at which Ward could provide input as to why his employment should not be terminated. A pre-disciplinary hearing (a "*Loudermill*[5] hearing") was held on December 13, 2010. Sherman Decl. Ex. A. Dkt. 103-1. Ward was represented at the *Loudermill* hearing by HPOA attorney Mr. Makler and HPOA representatives Mr. Beaver and Pat Hess. *Id.* After considering the evidence, including evidence from the *Loudermill* hearing, on April 4, 2011, Rademacher and Goerling recommended that Ward be terminated. *Id.*

Shortly after Rademacher and Goerling made their recommendation, Ward's criminal trial began. On April 15, 2011, Ward was found not guilty of all charges at trial. O'Kasey Decl. Ex. 10 at 1. Dkt. 83-10. As a result of this verdict, on April 18, 2011, Ward's leave status was changed back to paid administrative leave. Ward was on paid administrative leave until July 1, 2011, when he returned to work pursuant to a Discipline Settlement Agreement ("DSA") entered into by the City and the HPD, the HPOA, and Ward. *Id.* The DSA provided that:

> Reinstatement is without back pay or paid leave benefit accrual restoration for paid leave used and for leave without pay during the period from October 5th, 2010, through April 17th, 2011, when Ward's absence from duty was charged to a combination of holiday, compensatory time, vacation, and leave without pay, and when Ward was awaiting his criminal trial subject to the terms of a release agreement wherein he agreed not to possess a firearm for any reason other than for purposes of hunting.

*Id.* at 3. The DSA also required that the parties submit any claim or dispute arising out of the terms of the DSA in accordance with the grievance procedure specified in the CBA. *Id.* at 6. Ward resigned from the HPD on approximately August 30 or 31, 2012. Ward Depo. 10:10-15; 58:9-11.

---

[5] Such hearings are held pursuant to the requirements set out in *Loudermill v. Bd. of Educ.*, 470 U.S. 532 (1985).

PAGE 7 – OPINION AND ORDER

**DISCUSSION**

All of Ward's causes of action arise under 42 U.S.C. § 1983. To prevail on a claim for

liability under 42 U.S.C. § 1983, "a plaintiff must show both (1) deprivation of a right secured by

the Constitution and laws of the United States, and (2) that the deprivation was committed by a

person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th

Cir. 2012) (quotation marks and citation omitted). All parties agree that Defendants were acting

under color of state law. With respect to the rights that Ward claims were infringed, he alleges

one cause of action for "loss of reputation" in violation of the Fourteenth Amendment, one cause

of action for "violation of right to privacy" in violation of the First and Fourteenth Amendments,

and two separate causes of action that his procedural due process rights protected by the

Fourteenth Amendment were violated. These causes of action are addressed, in turn, below.

**A.  Ward's Claim for "Loss of Reputation"**

Ward alleges that the actions of the Individual Defendants created an actionable "loss of

reputation" because the Individual Defendants made false and damaging accusations against

Ward during the course of the IA investigation and pending criminal charges. The Fourteenth

Amendment's protection against deprivation of liberty encompasses the right of persons to

engage in any of the common occupations of life. *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th

Cir. 1992). If, when terminating an employee, the government engages in conduct "that so

severely stigmatize the employee that she cannot avail herself of other employment

opportunities, a claim for deprivation of liberty will stand." *Id.* (citation omitted). The stigma

required must be "severe and genuinely debilitating" such that it essentially forecloses the

employee's freedom to take advantage of other employment opportunities. *Id*. The charges must

amount to accusations of moral turpitude, such as immorality or dishonesty, to invoke

constitutional protection. *Id.* at 1142; *see also Tibbetts v. Kulongoski*, 567 F.3d 529, 537 (9th Cir. 2009).

As this Court previously held in dismissing Ward's loss of reputation claim against former defendant Rachel Bridges, Ward cannot prevail on such a claim because he was not terminated. *Ward v. Bolek*, 2013 WL 145828, at *5 (D. Or. Jan. 14, 2013). Termination of the employee is a cornerstone of a constitutional claim for deprivation of the Fourteenth Amendment liberty interest of employment. *See, e.g.*, *Tibbetts*, 567 F.3d at 537 (the stigmatizing conduct must be in the course of termination, which requires "some temporal nexus between the employer's statements and the termination") (quotation marks and citation omitted); *Hyland*, 972 F.2d at 1141 (the stigmatizing conduct must be "in the course of dismissing an employee"); *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir. 1988) ("In order to trigger the procedural protections of due process attendant to a properly presented liberty interest claim, a plaintiff must show that . . . the charge is made in connection with termination of employment.") (quotation marks and citation omitted).

Ward concedes that in order to raise a liberty interest the alleged stigmatizing conduct must be made in the course of dismissing an employee and that the loss of reputation must involve an accompanying loss of government employment. Plf's Resp. Br. at 37-38. Dkt. 92. Ward attempts, therefore, to raise a disputed issue of material fact as to whether he was terminated from his employment by citing to the November 4, 2010 letter. This letter, however, does not create a factual dispute as to whether Ward was terminated. The letter merely informed Ward that the City is "inclined to conclude that termination of your employment is warranted," that his "input will be considered fully before [the City] make[s] a final decision," and that a meeting had been scheduled for November 15, 2010, or at such other mutually agreeable time,

for Ward to offer his input as to why his employment should not be terminated. Burrows

Decl. Ex. 1. By its own terms, this letter was not a termination letter. Moreover, Ward admitted

during his deposition that he had not been terminated and that he remained an employee of the

HPD until he retired in August 2012. Thus, there is no genuine dispute as to whether Ward's

employment was terminated at the time of the alleged stigmatizing conduct and his loss of

reputation claim fails as a matter of law.

Additionally, Ward offers no evidence that as a result of the alleged stigmatizing conduct

he lost his freedom to take advantage of other employment opportunities. To the contrary, Ward

was returned from administrative leave to full employment at the HPD until he retired. He offers

no evidence that the conduct of the Individual Defendants "result[ed] in the permanent exclusion

or protracted interruption of gainful employment." *Hyland*, 972 F.2d at 1142.

**B.  Ward's Claim that the Individual Defendants Disclosed his Private Information**

In 1977, the United States Supreme Court recognized a constitutional privacy interest in

"avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Nixon v.*

*Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977). This type of privacy interest is often referred to

as "informational privacy." Although government "accumulation" of "personal information" for

"public purposes" may pose a threat to privacy, "statutory or regulatory duty to avoid

unwarranted disclosures" generally allays these privacy concerns. *Whalen*, 429 U.S., at 605; *see*

*also Nixon*, 433 U.S., at 457-458.

In 2011, the Supreme Court directly addressed informational privacy for the first time

since 1977. In *NASA v. Nelson*, 131 S. Ct. 736 (2011), the Supreme Court declined to decide

whether there is a right to informational privacy protected by the Constitution and, if so, what its

scope may be, and, for purposes of the decision, assumed without deciding that the conduct at

issue implicated a constitutionally-protected privacy right. *Id.* at 751, 756-57. The Supreme

PAGE 10 – OPINION AND ORDER

Court noted, however, that many courts have held under *Whalen* and *Nixon* (including the United States Court of Appeals for Ninth Circuit), "that disclosure of at least some kinds of personal information should be subject to a test that balances the government's interests against the individual's interest in avoiding disclosure." *Id.* at 756 n.9. The Supreme Court then concluded that NASA, as a "proprietor," could require certain contractors' employees to complete a background form that compels disclosure of any illegal drug use and any counseling or treatment for illegal drug use and could ask the employee's references and landlords broad questions, including those relating to finances, drug and alcohol use, and mental and emotional stability. *Id.* at 753, 756-57. The Court held that the information requested by NASA was reasonable in light of the governmental interests at stake and that any threat to privacy was allayed because the federal Privacy Act provides sufficient safeguards against unwarranted disclosure. *Id.* at 761.

The Ninth Circuit has held that the informational privacy right "'applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public.'" *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (quoting *Planned Parenthood v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002)). This right "is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Id.* (quoting *Lawall*, 307 F.3d at 790). The Ninth Circuit instructs courts "to decide 'whether the governmental interest in obtaining information outweighs the individual's privacy interest.'" *Seaton v. Mayberg*, 610 F.3d 530, 538 (9th Cir. 2010). In making the determination, courts may:

> balance the following factors to determine whether the governmental interest in obtaining information outweighs the individual's privacy interest: (1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there

is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Eden*, 379 F.3d at 551. This list is not exhaustive, and in most cases it will be the "overall context . . . that will dictate the tipping of the scales." *Seaton*, 610 F.3d at 538 (quoting *Ferm v. U.S. Trustee (In re Crawford)*, 194 F.3d 954, 959 (9th Cir. 1999)).

The Individual Defendants move for summary judgment against Ward's informational privacy claim. The Individual Defendants argue that the information allegedly disclosed was not "highly sensitive," there is no evidence that any of the Individual Defendants disclosed the information, there is no evidence that the information was disclosed to the public, and, to the extent the Individual Defendants disclosed information, they had a strong interest in disclosing information to investigators and prosecutors.

Ward does not clearly articulate his informational privacy claim and did not specifically respond to the Individual Defendants' motion for summary judgment against this claim. Ward submits a voluminous record (more than 400 pages) in his summary judgment response, but does not provide any argument relating to the informational privacy claim and does not identify any specific evidence that responds to the summary judgment motion on the informational privacy claim. Courts have "no independent duty 'to scour the record in search of a genuine issue of triable fact,' and may 'rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Thus, the Court is "under no obligation to undertake a cumbersome review of the record on [Ward's] behalf" and summary judgment can be granted on this basis alone. *Id.*

That said, the Court did review the record in an attempt to ascertain the contours of Ward's informational privacy claim and whether there is evidence supporting the claim sufficient

to defeat summary judgment. Ward's First Amended Complaint alleges that he suffered a

Fourteenth Amendment violation of his right of privacy when the Individual Defendants

disclosed Ward's personnel file to "outside parties," freely discussed Ward's IA investigation

among themselves and "outside parties," and sent communications to "outside parties" that

contained private information about Ward's employment and the investigation against him. First

Am. Compl. ¶ 79. In the factual background section of his response to the Individual Defendants'

motion for summary judgment, Ward cites to (and attaches to the Declaration of Michelle

Burrows) deposition testimony relating to the provision of information relating to Ward by at

least some of the Individual Defendants to Rachel Bridges at the Oregon DOJ, who was

investigating Ward and evaluating whether to charge him with a crime.[6] Plf's Resp. Br. at 12-14.

Ms. Bridges was either provided with or permitted to review Ward's police reports, use

of force reports, civilian complaints filed against him, and possibly one employment evaluation.

Bridges Depo. 39:14-40:14, 79:3-11, 86:15-87:8. Dkt. 93-1. Ms. Bridges did not receive any

medical records or similar information from Ward's personnel file and did not receive the HPD's

IA files relating to the incidents Ms. Bridges was investigating. *Id.* 39:24-40:1, 46:8-10. The

Oregon DOJ and the HPD conducted joint interviews of witnesses for the portions of their

investigations that overlapped, but the Oregon DOJ investigator could not participate in the IA-

---

[6] Ward also cites to and submits testimony relating to the provision of Ward's investigation file among various personnel within the Oregon DOJ, but how and to whom the Oregon DOJ disclosed information is irrelevant to Ward's claim that the *Individual Defendants* released Ward's private information. Ward also asserts numerous factual statements and conclusions that are not supported by any evidence in the record. The Court views the evidence in the light most favorable to Ward and draws all reasonable inferences from the evidence in Ward's favor. *See Clicks Billiards*, 251 F.3d at 1257. The Court does not, however, accept as true Ward's unsupported and conclusory statements, and such statements are insufficient to defeat summary judgment. *See Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (noting that a plaintiff "must produce evidence in response" to a well-founded summary judgment motion and that a plaintiff "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements").

specific portions of the interviews and Ms. Bridges did not have access to those portions of the interviews. *Id.* 46:20-47:6, 48:22-49:5.

This evidence is insufficient to defeat summary judgment. There is no evidence in the record that the Individual Defendants disclosed Ward's information to anyone other than employees of the HPD, Oregon DOJ, and possibly WCSO or Washington County District Attorney's office.[7] Thus, there was no public disclosure. Although the Ninth Circuit has recognized that even without public disclosure, disclosure to an "unbounded, large number of government employees" of information as highly sensitive as abortion records may trigger informational privacy concerns, *Eden*, 379 F.3d at 551-52, such circumstances are not present here. The alleged disclosure in this case was to police investigators and government prosecutors and included only information necessary to conduct the investigation and criminal prosecution. It was neither as highly sensitive as abortion records nor provided to an "unbounded" number of government employees, which was the situation in other cases. Thus, the Court finds that the disclosure in this case did not implicate a constitutionally-protected privacy right.

Even if the alleged disclosure in this case did implicate a constitutional privacy interest, the government's interest in the disclosure outweighs Ward's privacy interest. The information disclosed was directly relevant and probative to the investigation and, ultimately, the criminal prosecution and departmental discipline of Ward. The Individual Defendants and the HPD have an interest in disclosing information to aid in both an internal disciplinary investigation and an external criminal investigation of one of their employees. *See Nelson*, 131 S. Ct. at 758 ("Reasonable investigations of applicants and employees aid the Government in ensuring the

---

[7] The evidence is unclear whether HPD or its employees provided any records or other information to the WCSO or Washington County District Attorney's office during their investigation into Ward.

security of its facilities and in employing a competent, reliable workforce."). This interest is

heightened when the employee being investigated is a police officer, who is tasked with

enforcing the law and interacts extensively with citizens over whom he has power and influence.

There are also statutory and public policy grounds that support the reasonableness of the

disclosure. Under Oregon law, any confidentiality of information is preserved when disclosures

are made from one public body to another and furnished in connection with performance of the

duties of the receiving body. Or. Rev. Stat. § 192.502(10). This is a sufficient statutory safeguard

to allay any privacy concerns in this case. *See Nelson*, 131 S. Ct. at 761-62; *Whalen*, 429 U.S., at

605; *Nixon*, 433 U.S., at 457-458. Additionally, a requirement that prosecutors cannot review

personnel files of police officers who are under criminal investigation is contrary to the body of

case law that heavily encourages, although does not require, prosecutors to review police officer

personnel records whenever a police officer is a testifying witness in a criminal case to ensure

that any exculpatory material, such as disciplinary reports or actions, are available to the criminal

defendant. *See, e.g.*, *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996) (reiterating that a

court cannot order a prosecutor personally to review law enforcement personnel files for

exculpatory information, but noting that there is little justification and much danger to the quality

of justice if the prosecutor does not); *United States v. Colima-Monge*, 962 F. Supp. 1337, 1339-

40 (D. Or. 1997) (noting that the government has a duty to inspect personnel records of federal

law enforcement officers who will testify at a trial, regardless of whether the defense has made a

showing of materiality). It would be illogical if constitutional privacy concerns were triggered

when law enforcement personnel files were disclosed to prosecutors when the officer is a

*criminal suspect*, but were not triggered when the officer is merely a *witness*. The government

has a strong interest in making those disclosures necessary to investigate whether a police officer has committed a crime.

## C. Ward's Two Procedural Due Process Claims

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-01 (9th Cir. 2008). To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Id.* at 1090. "Notice and a meaningful opportunity to be heard are hallmarks of procedural due process." *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012) (quotation marks and alterations omitted) (quoting *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989)).

The Supreme Court has repeatedly recognized, however, that "the Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *NASA v. Nelson*, 131 S. Ct. 736, 757-58 (2011) (quoting *Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 598 (2008). "This distinction is grounded on the "'common-sense realization' that if every 'employment decision became a constitutional matter,' the Government could not function." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)); *see also Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause . . . is not a guarantee against incorrect or ill-advised personnel decisions.").

1.  **Procedural due process claim against the Individual Defendants**[8]

    a.  **Ward has a protected property interest**

All parties agree that Oregon law and the CBA provide Ward with a protected property interest in his employment. The Individual Defendants argue that because Ward was not terminated from his employment, this property interest is not implicated in this case, and, thus, no property interest is implicated. Ward was, however, placed on unpaid administrative leave from approximately October 5, 2010 through April 18, 2011, forced to use his accrued vacation leave, and after his leave was exhausted he did not receive any compensation. Under the facts of this case, Ward's being placed on unpaid leave implicates a protected property interest. *See* Or. Rev. Stat. § 236.360 (public employees in Oregon require due process before being discharged or disciplined, which includes economic sanctions); *Brett v. City of Eugene*, 880 P.2d 937, 939-940 (Or. Ct. App. 1994) (deprivation of accumulated leave implicates a protected property interest); *Bostean v. Los Angeles Unified Sch. Dist.*, 63 Cal. App. 4th 95, 110 (Cal. Ct. App. 1998) (leave without pay is tantamount to suspension without pay and implicates a property interest); *see also Ganley v. Cnty. of San Mateo*, 2007 WL 4554318, at *3-4 (N.D. Cal. Dec. 20, 2007) (applying California law and holding that the plaintiff "has a property interest both in her job in general and in not being placed on unpaid leave or forced to use accrued benefits"); *Ceko*

---

[8] In his response brief, Ward argues that, in the alternative, the Court should consider whether Ward's substantive due process rights were violated. Ward did not plead a cause of action for violation of his substantive due process rights and may not allege a new cause of action in response to a summary judgment motion. *See, e.g., Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (finding that when allegations are not in the complaint, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Prods. Inc. v. Southwall Techs, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'") (quoting *Fleming v. Lind–Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (new issues raised in response to summary judgment were not appropriate for consideration).

*v. Martin*, 753 F. Supp. 1418, 1422-23 (N.D. Ill. 1990) (applying Illinois law and holding that "[w]hile it is true that [the plaintiff] was not removed from employment in the strict sense of the term, he was effectively deprived of his salary when he was placed on involuntary leave of absence. Contrary to defendants' position, such a deprivation arouses due process concerns.").

### b. Ward was afforded sufficient procedural due process

Because placing Ward on unpaid leave implicates at least some protected property interest, the government was required to provide Ward with adequate due process with respect to that employment action. The parties submit evidence and argument relating to how the IA and criminal investigations were conducted and the procedures provided to Ward with respect his potential termination, including evidence relating to the *Loudermill* hearing. Because Ward was not terminated, however, he was not deprived of his property interest in retaining his employment and the procedures provided to him relating to his potential termination from employment are not relevant to the Court's due process analysis. The only property interest implicated in this case arises from Ward's placement on unpaid administrative leave. Thus, the Court considers only whether Ward received adequate due process relating to his being placed on unpaid administrative leave.

"The nature of the deprivation Plaintiff suffered determines how much process [he] is due." *Ganley*, 2007 WL 4554318, at *5. "[D]eprivations short of termination do not always require the full panoply of procedural protections." *Id.* at *9. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Analyzing whether adequate procedural due process was provided "essentially boils down to an ad hoc balancing inquiry." *Brewster v. Board of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998). In making that inquiry, the Supreme Court suggests courts balance (1) the private interest that will be affected, (2) the risk of an erroneous

deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedures, and (3) the government's interest, including the functions involved and the burdens of additional or substitute procedures. *Mathews*, 424 U.S. at 335.

For the first factor, Ward has a "significant private interest in the uninterrupted receipt of his paycheck." *Bostean*, 63 Cal. App. 4th at 113. For the second factor, "[a] public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, those procedures satisfy due process." *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992). "Grievance/arbitration procedures are a universally accepted method of resolving employment disputes," thus, "the risk of an erroneous determination in the grievance/arbitration procedure is not large, and the value of additional or substitute procedures is not great." *Id.* When a collective bargaining agreement provides for an adequate grievance and arbitration procedure, even if the procedure is solely available at the discretion of the union and the union elects not to file a grievance on behalf of the employee, that is sufficient process. *Id.* at 951.

Here, Ward had significant procedures available to him through his CBA. The CBA provides for adequate notice and progressive, multi-level grievance and arbitration procedures. Additionally, the HPOA filed Step One and Step Two grievances on Ward's behalf objecting to his placement on unpaid leave. It does not appear that the HPOA took the grievance to Step Three, but that does not render the available process constitutionally deficient. *See Armstrong*, 964 F.2d at 951. Moreover, the issues relating to Ward's back pay and benefits were fully resolved in the DSA that was voluntarily entered into by Ward, and disputes arising out of the DSA were also subject to the grievance and arbitration procedures of the CBA.

For the third factor, Ward was originally placed on paid leave, but that leave was changed to unpaid leave after he was arrested and arraigned because, under the terms of Ward's pretrial release, he was prohibited from possessing a firearm except for hunting. The government has a strong interest in not continuing to use taxpayer funds to pay the salary of a police officer who could not perform the essential functions of his job. Additionally, "[t]here is a strong public and private interest in maintaining an effective grievance/arbitration process to settle disputes between employers and employees." *Armstrong*, 964 F.2d at 951.

Balancing the factors in the circumstances of this case, the Court finds that Ward was provided with constitutionally adequate due process relating to his placement on unpaid leave. *See, e.g.*, *id.* at 951 (the fact that a grievance process was available, even though only the union could utilize that process and declined to do so for the plaintiff at bar, provided sufficient due process); *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987) (grievance/arbitration procedures provided sufficient post-deprivation process); *Flugence v. City and Cnty. of San Francisco*, 2013 WL 6235372, *8 (N.D. Cal. Dec 02, 2013) (grievance procedures in collective bargaining unit provided sufficient due process protections); *Bilan v. City and Cnty. of Honolulu*, 2006 WL 3201874, *6 (D. Haw. Nov 02, 2006) (same). Throughout the events giving rise to this case, Ward was fully informed that he was the subject of a criminal investigation and an IA investigation, and he was represented at various times by HPOA counsel, HPOA representatives, and his own counsel. He or his representatives grieved his placement on unpaid leave and negotiated the terms of his return to work and the DSA. Ward had sufficient notice of the actions

and potential actions that might implicate his property rights and he had a meaningful

opportunity to be heard through the grievance process and during the various negotiations.[9]

### 2.  Procedural due process claim against the City of Hillsboro

Ward also has brought a Section 1983 claim against the City under *Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658 (1978). "A municipality is subject to suit under § 1983 only 'if it is

alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers.'" *Gravelet-Blondin v.*

*Shelton*, 728 F.3d 1086, 1096-97 (9th Cir. 2013) (quoting *City of St. Louis v. Praprotnik*, 485

U.S. 112, 121 (1988)). Thus, to sustain a *Monell* claim, there must be an underlying

constitutional tort committed against the plaintiff. *See Monell*, 436 U.S. at 691 (concluding "that

Congress did not intend municipalities to be held liable unless action pursuant to official

municipal policy of some nature *caused a constitutional tort*") (emphasis added); *Glenn v.*

*Washington Cnty.*, 673 F.3d 864, 880 (9th Cir. 2011) ("'Pursuant to 42 U.S.C. § 1983, a local

government may be liable for *constitutional torts committed by its officials* according to

municipal policy, practice, or custom.'" (emphasis added) (quoting *Weiner v. San Diego*

*Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000))).

As discussed above, the Court finds that there was no violation of Ward's constitutional

rights by the Individual Defendants and grants summary judgment against all of Ward's claims

against the Individual Defendants. Thus, no constitutional tort was committed against Ward and

summary judgment is granted on all claims of municipal liability under *Monell*. *See Hayes v.*

---

[9] Although the procedures available to Ward relating to his placement on unpaid leave
were post-deprivation (as compared to the procedures available to Ward relating to his potential
termination, which were pre-deprivation), Ward is not entitled to the "full panoply" of
procedures for the lesser deprivation of being placed on unpaid leave and the Court finds that the
post-deprivation procedures in this case provided sufficient due process. *Ganley*, 2007 WL
4554318, at *9; *see also Costello*, 811 F.2d at 784.

*Cnty of San Diego*, 736 F.3d 1223, 1231 (9th Cir. 2013) (affirming summary judgment on *Monell* claims against municipality when summary judgment granted against underlying constitutional claims).

**D.  Qualified Immunity**

The Individual Defendants also argue that they are shielded from any wrongdoing in this case by qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citation omitted). A court has discretion to decide which of these two prongs of the qualified-immunity test to tackle first. *Id*. Qualified immunity allows government officials to make reasonable but mistaken judgments about open legal questions and "protects all but the plainly incompetent or those who knowingly violate the law." *Id*. at 2085 (quotation marks and citation omitted).

Here, even if Ward's claims could survive summary judgment on the merits, the Individual Defendants would be protected from those claims by qualified immunity because none of the alleged deprivation of rights were clearly established at the time of the alleged deprivation (or even as of the date of this Opinion).

It is not a clearly established right that a constitutionally-protected liberty interest is implicated when stigmatizing conduct is not accompanied by termination. Thus, the Individual Defendants are shielded from any wrongdoing relating to the "loss of reputation" claim. Similarly, whatever the scope of the constitutional right of informational privacy, it is not clearly established that provision of law enforcement personnel records to investigating and prosecuting authorities violates that right. Accordingly, the Individual Defendants have qualified immunity from the informational privacy claim. Finally, there was no clearly established law indicating

that placing Ward on unpaid leave status when the CBA provides for post-deprivation grievance and arbitration procedures was a violation of due process. To the contrary, numerous cases have held that the grievance procedures available to Ward, even post-deprivation, provide sufficient due process. Thus, the Individual Defendants have qualified immunity from the procedural due process claim.

**CONCLUSION**

Pursuant to Plaintiff's own motion (Dkt. 92), defendants Washington County, Spang, Ashenbrenner, Skinner, and Zaugg are dismissed and Plaintiff's Fourth, Fifth, Sixth, Seventh, and Ninth Claims for Relief are dismissed. Accordingly, Washington County's Motion for Summary Judgment (Dkt. 74) is DENIED as moot. The remaining defendants' Motion for Summary Judgment (Dkt. 80) is GRANTED, and all remaining claims and defendants are dismissed. This case is dismissed with prejudice.

**IT IS SO ORDERED**.

DATED this 27th day of February, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge